IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | |
|---|---|
| Jonathan Williams, | C/A No.: 1:10-1107-TLW-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| Pepperidge Farm, Inc., | |
| Defendant. | |

Jonathan Williams ("Plaintiff") filed this action on May 3, 2010 against Pepperidge Farm, Inc. ("Defendant"), alleging race and sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and wrongful termination. This matter comes before the court on Defendant's motion for summary judgment filed September 20, 2011 [Entry #48]. On September 20, 2011, the court issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary judgment procedure and possible consequences if he failed to adequately respond to the motion for summary judgment by October 27, 2011. [Entry #49]. Plaintiff failed to file a response to the motion, and the court issued an order on November 4, 2011 directing Plaintiff to advise by November 22, 2011, whether he wished to continue with the case. [Entry #55]. Plaintiff filed a response to the motion on November 22, 2011. [Entry #57]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the

provisions 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendant's motion for summary judgment.

I. Factual Background

Plaintiff is an African-American male whom Defendant hired as a Bakery Helper in its Aiken plant on March 3, 1993. [Entry #48-3 at 11; #48-4 at 11]. When Plaintiff applied to work at Pepperidge Farm, he agreed to abide by the Company's rules, regulations and policies and acknowledged that, if hired, he would be an at-will employee. [Entry #48-4 at 8, 17-19; #48-3 at 27-31, 38-40]. The Handbook specifically referenced rules of conduct [Entry #48-4 at 28] which prohibited dishonesty and leaving the Company's premises without proper authorization, and safety rules [Entry #48-4 at 30-31] which required employees to report all injuries, accidents, and "near misses" (*i.e.*, accidents without injury) to the employee's supervisor. Scott Benfield was Plaintiff's direct supervisor. [Entry #48-3 at 12]. Jennifer Lannom was the Human Resources Manager. *See* Declaration of Jennifer Lannom [Entry #48-2] ("Lannom Affidavit").

On September 27, 2007, Plaintiff was promoted to the position of head mixer on the third shift, a position which required him to drive a forklift.[1] [Entry #48-3 at 43-44; #48-4 at

---

[1] Plaintiff indicated to Pepperidge Farm on a New Position Qualification Report that he was able to drive a forklift. [Entry #48-3 at 45-52]. Plaintiff initially testified in his deposition that he never had a forklift license [Entry #48-3 at 19, 45] and that Pepperidge Farm never gave him any forklift training before October 2007 [Entry #48-3 at 16, 51]. However, he

54]. On January 7, 2008, Plaintiff transferred to the position of head mixer on the morning shift. [Entry #48-3 at 52; #48-4 at 56]. While Plaintiff was head mixer, the Mixing Department had six employees, all African American, including four males. [Entry #48-3 at 13].

On February 4, 2009, Plaintiff received a written warning ("Employee Counseling Report") for having left the premises during a 15-minute break period without authorization. [Entry #48-3 at 53-55; #48-4 at 58].

On May 20, 2009, Plaintiff received an Employee Counseling Report for having failed to report a forklift accident on May 12, 2009, when the forklift that Plaintiff was operating struck a safety pole in the Defendant's warehouse. [Entry #48-3 at 60-63; #48-4 at 59]. During its investigation of the incident, Pepperidge Farm determined that Plaintiff had been dishonest and deliberately misrepresented information to his managers. *Id.*; *see also* Lannom Affidavit ¶¶ 9, 11 [Entry #48-2]. Pepperidge Farm terminated Plaintiff on May 21, 2009. [Entry #48-3 at 24; #48-4 at 2; *see also*, Lannom Affidavit ¶ 9 [Entry #48-2].

On July 10, 2009, Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC"), selecting race and sex as the bases for discrimination. [Entry #48-4 at 2]. After investigating his charge, SCHAC issued to

---

subsequently admitted that he already had a forklift license when he was hired by Pepperidge Farm. [Entry #48-3 at 69; #48-4 at 79-80]. He also admitted that he received additional training by Pepperidge Farm in 1998 and 2001. [Entry #48-3 at 70-75; #48-4 at 81-86]. Plaintiff alleges in his response to the motion for summary judgment that he "didn't have forklift license to operate the new forklift" [Entry #57 at 3]. Whether Plaintiff had the proper forklift license does not present a genuine dispute of a material fact for purposes of summary judgment.

Plaintiff a "no cause" finding and a Dismissal and Notice of Right to Sue on November 2, 2009. [Entry #48-4 at 3-6]. The Equal Employment Opportunity Commission ("EEOC") adopted the findings of SCHAC and issued to Plaintiff a Dismissal and Notice of Rights on February 9, 2010. [Entry #48-4 at 6]. Plaintiff timely filed this action alleging Title VII claims for race and sex discrimination.

II. Discussion

    A.    Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B. Analysis

1. Title VII Discrimination

Plaintiff alleges he was wrongfully terminated from his position at Defendant's Aiken plant on May 21, 2009. Because Plaintiff lacks any direct evidence of race or sex discrimination, he proceeds on the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Plaintiff has the initial burden to establish a prima facie case by the preponderance of the evidence by showing that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) his position remained open or was filled by a similarly-qualified person outside the protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc). Defendant may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005).

Defendant argues Plaintiff is unable to establish his prima facie case because although he is African-American and was terminated, he cannot demonstrate (1) that he was

performing his job duties at a level that met his employer's legitimate expectations; or (2) that he was replaced by a similarly-qualified person outside the protected class.

Plaintiff cannot demonstrate at the time of his termination, he was performing at a level that met his employer's legitimate expectations. The case law reflects a distinction between whether a plaintiff is qualified for a job and whether he is meeting the employer's legitimate job expectations. *See Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006) (plaintiff's argument that "he only needs to show that he is 'qualified' for the job, rather than meeting his employer's legitimate job expectations, is foreclosed by circuit precedent"). As the *Warch* court elaborated, "considering an employer's legitimate expectations comports with the purpose of requiring the establishment of a prima facie case—to screen out those cases whose facts give rise to an inference of nondiscrimination, in other words, to eliminate the most common, nondiscriminatory reasons for the employer's conduct." *Warch* at 514. The court made a distinction between the hiring of a new employee, where the typical focus is on the candidates' qualifications, and the firing of an employee, where the more likely focus is "on other aspects of the employment, such as poor job performance or infractions of company rules." *Id.*

Defendant argues that Plaintiff was not meeting Pepperidge Farm's legitimate expectations at the time of his termination, citing to (1) the February 4, 2009 Employee Counseling Report for leaving Company property during a 15-minute break period without

authorization;[2] (2) the second Employee Counseling Report for failing to report a forklift accident on May 12, 2009, when the forklift that Plaintiff was operating struck a safety pole in the Defendant's warehouse; (3) its determination after investigation that Plaintiff had been dishonest and deliberately misrepresented information to his managers.

Further, Plaintiff cannot demonstrate that his position remained open or was filled by similarly-qualified person outside the protected class. Defendant presented evidence, uncontested by Plaintiff, that Defendant transferred the African-American female head mixer on the third shift to replace Plaintiff on the morning shift and promoted an African-American male to head mixer on the third shift. Lannom Affidavit ¶ 13 [Entry #48-2].

Even if the court assumes that the prima facie case is satisfied, Plaintiff cannot overcome his burden under *McDonnell-Douglas*. Defendant has offered a legitimate reason for terminating Plaintiff: for failing to report his forklift accident and for dishonesty and deliberate misrepresentation of information. Lannom Affidavit ¶ 9 [Entry #48-2]. The undersigned submits this explanation is sufficient to shift the burden to Plaintiff, who must show that the legitimate reasons offered by Defendant were not the true reasons, but were a pretext for discrimination. This burden on Plaintiff merges with his ultimate burden of persuading the court that he is the victim of intentional discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

---

[2] Plaintiff alleges that he was on his 30-minute meal period when he left the premises, However, whether he was on a 15-minute or 30-minute break is irrelevant, as Plaintiff acknowledges that he did not clock out or back in when he left the premises. [Entry #48-3 at 53-59].

Plaintiff fails to offer any evidence of pretext and race or sex discrimination. In his response, Plaintiff makes general assertions that "All management is white, no minority, on both occasion Human Resources was present in the meeting, she didn't show professionalism or apologize either time." However, because Plaintiff's subjective assertions and unsupported speculation are insufficient to create genuine dispute of material fact as to Defendant's allegedly discriminatory conduct, Plaintiff must come forward with allegations substantiated by accounts of specific dates, times or circumstances to survive summary judgment. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) ("neither unsupported speculation, nor evidence that is merely colorable or not significantly probative will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.") (internal citations omitted).

Plaintiff has alleged that two females were treated differently for allegedly similar conduct, but has offered no evidence to support his claim beyond his own mere allegations. Plaintiff has failed to establish that the comparators were similarly situated in all relevant respects: that they dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *See Ward v. City of North Myrtle Beach*, 457 F. Supp. 2d 625, 643 (D.S.C. 2006); *see also Gilliam v. South Carolina Dept. of Juvenile Justice*, 474 F.3d 134 (4th Cir. 2007) ("Although [the plaintiff] made several general

statements of dissimilar treatment, she provided very few specifics. The few specific examples [the plaintiff] did proffer were not supported by any evidence other than her own general statements, which often lacked detail. Such assertions, standing alone, are insufficient to sustain an actionable Title VII claim.") (internal citations omitted).

While Plaintiff may disagree with Defendant's assessment and decision to terminate him, "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995). Courts do not sit as "super personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 Fed.Appx. 731 (4th Cir. 2004) (citing *Smith v. University of N. Carolina*, 632 F.2d 316, 346 (4th Cir.1980)). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory. *Id.* (citing *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1156–57 (2d Cir. 1978). Plaintiff testified that he did not know who made the decision to terminate his employment with Pepperidge Farm or what factors were considered in making the decision to terminate his employment. [Entry #48-3 at 18-19]. Further, Plaintiff has presented no evidence that Defendant's decision to terminate him was other than because it believed he failed to report his forklift accident and that he was dishonest and deliberately misrepresented information. In fact, Plaintiff conceded during his deposition that Pepperidge Farm believed that he had been dishonest and had deliberately misrepresented information after his forklift accident:

Q: So when Pepperidge Farm terminated your employment for dishonesty and

9

>deliberate misrepresentation of information, that's what they thought had occurred, correct?

A: Yes.

Q: And you put in the Employee Comments, "It's just a miscommunication."

A: I didn't never have training on the forklift. Me and Scott had a misunderstanding with the bowl cold and the pole.[3]

Q: Okay. So do you now understand that if Pepperidge Farm thought that you did not report the accident and that you weren't truthful with them during the investigation, that they thought they were doing -- taking an appropriate action, didn't they? It wasn't what you said happened, but it's what they thought happened. And they took an action based on what they thought happened, right?

A: Yeah.

[Entry #48-3 at 62-63].

Even if Plaintiff denies that the dishonesty and deliberate misrepresentation after his forklift accident, as alleged, there is no evidence that Defendant's management, as the decisionmakers, did not honestly believe and rely on their good faith belief that Plaintiff had been dishonest and had deliberately misrepresented information. Plaintiff has no evidence to cast doubt on this legitimate, non-retaliatory reason for his discharge.

The court's only concern is

> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

---

[3] In his complaint, Plaintiff claims that he misunderstood Scott Benfield's query into whether he hit the pole as asking "if the third bowl was cold." [Entry #1 at 6].

*DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir. 1998) (citing *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410–411 (7th Cir. 1997).

Plaintiff attempts to show that Defendant's nondiscriminatory reasons for his termination are pretextual by relying on his own opinion. However, the Fourth Circuit has repeatedly explained that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (internal citations omitted). Accordingly, Plaintiff's perception of himself is not relevant. Plaintiff has failed to demonstrate as a reasonable probability that Defendant's belief was either false or pretextual for discrimination. *DeJarnette,* 133 F.3d at 299 (employee must present evidence reasonably calling into question the honesty of his employer's belief; employee's mere demonstration that his employer's belief may be incorrect is not sufficient to prove discrimination).

In sum, nothing in the evidence or arguments presented rebuts Defendant's legitimate reason for terminating Plaintiff. Plaintiff has failed to provide any evidence that race or sex discrimination was the real reason for his termination instead of the reasons Defendant proffered. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) (noting it is not enough to disbelieve the defendant—a factfinder must believe plaintiff's explanation of intentional race discrimination). There is no evidence from which a reasonable jury could conclude Plaintiff is entitled to a verdict. Therefore, the undersigned submits that Defendant is entitled to summary judgment on Plaintiff's Title VII claim for race and sex discrimination.

2. Wrongful Termination

Liberally construed, Plaintiff alleges a claim for wrongful termination in violation of public policy under South Carolina law. Under South Carolina's doctrine of employment at-will, either party may terminate the employment contract at any time, for any reason, or no reason at all. *See Prescott v. Farmers Tel. Coop., Inc.*, 516 S.E.2d 923, 925 (S.C. 1999). South Carolina courts, however, have carved out an exception when the discharge of an at-will employee constitutes a violation of a clear mandate of public policy. *See Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 214 (S.C. 1985). Although not definitively so, the exception has been narrowly available, typically, only "when an employer requires an employee to violate the law or the reason for the employee's termination was itself a violation of criminal law." *Lawson v. S.C. Dept. of Corrections*, 532 S.E.2d 259, 261 (S.C. 2000); *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011). But, the exception does not extend to situations where the employee has an existing statutory remedy for wrongful termination. *See Dockins v. Ingles Markets, Inc.*, 413 S.E.2d 18 (S.C. 1992) (existing statutory remedy for wrongful termination under Fair Labor Standards Act).

Plaintiff has not alleged that Defendant forced him to violate the law or that his termination was in violation of criminal law. Plaintiff "also may not pursue a claim for wrongful termination in violation of public policy based on an alleged Title VII violation because in South Carolina a 'public policy' claim can only be maintained in the absence of a statutory remedy." *Amason v. PK Mgmt., LLC*, 2011 U.S. Dist. LEXIS 30882 (D.S.C. Mar. 1, 2011); *Zeigler v. Guidant Corp.*, 2008 U.S. Dist. LEXIS 36925 (D.S.C. May 6, 2008) ("The

*Ludwick* exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."). Consequently, to the extent Plaintiff's complaint states a claim for wrongful discharge in violation of public policy, it is recommended that such claim be dismissed.

III. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's motion for summary judgment [Entry #48] be granted.

IT IS SO RECOMMENDED.

May 1, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).